UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL ODELL ZWEIFEL, JR.                CIVIL ACTION

VERSUS                                    NO. 09-2997

JEFFERSON PARISH CORRECTIONAL             SECTION "B" (2)
CENTER ET AL.

## REPORT AND RECOMMENDATION

Plaintiff, Michael Odell Zweifel, Jr., is a prisoner currently incarcerated in the Dixon Correctional Institute ("DCI") in Jackson, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Jefferson Parish Correctional Center ("JPCC") Warden Glenn Jambon, Lt. Domus, inmate Cody Wright and a "Female Guard on 3-1-08 4th Floor Left Side." Zweifel alleges that while incarcerated in the JPCC in March 2008, he was attacked by Wright, another inmate with whom he was being housed. He seeks monetary and injunctive relief. Record Doc. No. 1 (Complaint at ¶ V).

On April 21, 2009, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Brad Theard, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

# THE RECORD

Plaintiff testified that he is currently incarcerated in DCI based upon his conviction for simple burglary on April 11, 2008, for which he is serving a six-year prison sentence. He confirmed that his claims in this case are based upon an incident that occurred on March 1, 2008, while he was incarcerated in the JPCC.

Asked to describe what happened on that date, Zweifel testified that he woke up at about 2:00 p.m., and about 30 minutes later he was playing cards with other inmates in the jail. He stated that another inmate, defendant Cody Wright, "came up behind me and snuck me and broke my jaw in two places." By "snuck," he testified that he meant that the other inmate "just came up behind me and hit me." Zweifel testified that he and Wright had no previous problems of any sort. He said that he had no previous arguments or altercations with Wright, who was his cell-mate. Zweifel stated that he was <u>not</u> aware that Wright had any prior history of attacking other inmates, except that "they kept moving him (Wright) all over the jail," but at the time of the attack, plaintiff had no prior problems with Wright and he had not heard that Wright had any problems with other inmates. As far as Zweifel knew, Wright simply snuck up behind him on that date and hit him for no reason.

Plaintiff testified that his jaw was broken by Wright in two places, "one on each side." He confirmed that one of the claims he asserts in this case is against Wright for

the attack. He stated, however, that he also asserts a claim against an unknown female guard at the jail who "had left her post" at the time of the attack. Zweifel testified that after Wright hit him, "when I turned around, the guard was nowhere to be found." He said that the guard should have been in "her little pod watching" the tiers where he was located. He described the "pod" as a glass booth where the guard on duty sits and watches two tiers of the jail simultaneously. He complained that the guard should have been on duty, but she was not in the booth at the time of the attack.

Zweifel testified that "out the corner of my eye I seen (sic) her (the guard) walk off like two to three minutes before the incident happened. But I wasn't expecting nothing. I mean, I never had no problems with anybody on that dorm." He stated that he did not know where the guard went when she left the booth, and all he knew about her was that she was a woman who should have been in the guard booth at the time of the attack.

Plaintiff testified that the female guard returned to the cell area shortly after the attack "and locked our cells. When I tried to get her attention, she wasn't there, so I went into my cell to clean up, and then she came back and locked all the cells." He said another inmate then told the guard that Zweifel needed medical attention. Plaintiff testified that the female guard returned to the cell area within about five minutes of the attack. He estimated that the guard was absent from her post in the security booth for

about eight to ten minutes and that Wright's attack occurred within a matter of seconds. "He hit me one time, that was it," plaintiff said. Zweifel said he had no idea why the guard had left her post.

He stated that his claim against the unidentified guard is that she left her post and he was then attacked. Plaintiff said there was no other guard on duty in that area at that time and that there is typically one guard on duty in the security pod at any given time and that the guard on duty can see into both tiers. He stated that he had no problems with this guard before the incident and that "I didn't even know her." He added that he did not know if any "writeup" was made concerning the incident, but that he had never received one.

Zweifel testified that after another inmate got the guard's attention and told her Zweifel needed medical attention, he talked to the guard and she saw that Zweifel was bleeding, "so she called for three lieutenants," one of whom was defendant Lt. Domas. He said he spoke to the guard within eight to ten minutes of the time he was hit by Wright.

Plaintiff confirmed that one of his claims in the case is related to his medical attention; specifically, that he was delayed for several hours between the time of the incident and the time he was taken to the hospital. He testified that after Wright struck him, deputies moved Zweifel to a holding cell on another floor, so that a doctor at the jail

could "see what was what." He testified that it took about an hour or so before medical personnel at the jail saw him and determined that he needed to be taken to the hospital. He stated that during that time, he was seen by a nurse, who talked to another nurse, who also looked at Zweifel and then told a lieutenant that he needed to be taken to the hospital. Plaintiff complained that he did not arrive at the hospital until 8:00 or 8:30 p.m. that night, a delay of five or six hours from the time he was attacked by Wright earlier that afternoon. He said he was taken to University Hospital in New Orleans.

Zweifel stated that he had not yet received a copy of his medical records, which I had ordered and received prior to the conference. Record Doc. Nos. 6 and 14. He complained that even after JPCC deputies began to take him to the hospital, he was further delayed while the transport deputies "had to ride up a parking garage to go get cell phones, while I'm in the back seat suffering with pain."

He testified that when he arrived at the hospital, he was given an injection of narcotics and was scheduled for "pre-op surgery" three days later. He complained, however, that he was not returned to the hospital on March 3rd as scheduled, but was delayed 13 days until he was in fact taken to the hospital. Zweifel confirmed the references in the medical records that he was given prescriptions for medications while at the hospital on his first visit, but he complained that he only received one of the

medications, "Ultrim," which he described as a pain reliever, "once or twice" and some Tylenol 3 at the jail before he returned to the hospital.

Zweifel confirmed the reference in the medical records that he was taken back to the hospital on March 10th for a pre-surgery examination and that he returned to the hospital again on March 13th for his oral surgery. He testified that the surgery was to install two screws and some wire in both sides of his jaw. He said he went into the hospital for oral surgery on March 13th and was returned to the jail the following day. He confirmed that he received prescriptions in the hospital for Lortab, Keflex and Peridex, but when he returned to the jail he was given only the Keflex and the Peridex because the guards "would not give me any narcotics." He said he received the Keflex and Peridex every day until he was moved from the medical unit at the jail back to the general population area on March 24th. He confirmed the reference in the medical records that he was returned to the hospital from the jail on March 17th for a post-surgical follow-up examination and that he again returned to the hospital on March 25th for another follow-up exam. Zweifel said that during this time period he continued to receive Keflex and Peridex, a mouth rinse, and that he also received Tylenol. He also confirmed the reference in the medical records that he was again taken to the hospital on April 15th for another follow-up examination. He said he was placed on a soft diet at the

jail from the time of the incident until he was transferred from JPCC into the state correctional system on April 29, 2008.

Plaintiff confirmed that his basic complaints about his medical care in this case are that there was an initial delay of five or six hours after his jaw was broken before he was taken to the hospital and that another delay of ten to 13 days occurred before he received his oral surgery. He also complained that between the date of the incident, March 1, 2008, and March 24, 2008, the period of time during which he was being kept in the medical unit at JPCC, "I was not allowed to use the phone, I couldn't make store, I couldn't buy no stamps . . . to write my people to let them know anything, I couldn't receive no visits; they did me bad." He said that he continues to experience some pain, "not in pain, pain, you know, serious pain," but pain at "change of weather," including "constant headaches." He said he continues to experience some problems with his mouth and that he has no teeth in his mouth.

Zweifel testified that prior to the incident he telephoned his family every day, but after the incident, while he was in the medical unit for 23 days, he was not permitted to do so. He said he could receive mail during this 23-day period, but he could not send mail, contact his family or "make canteen." He complained that while he was in the medical unit "they took all my privileges, took all my rights," even though he had no disciplinary problems. He said his privileges were restored after he was transferred out

of the medical unit and back into the general population area of the jail. He said the reason he was given for the denial of his privileges during the three weeks he was confined to the medical unit was that it was against the medical rules.

As to his claim against Lt. Domas, Zweifel alleged that Domas was supposed to arrange his transportation to the hospital after the attack, but delayed for five or six hours before he was transported. He said he sued the warden because the warden is in control of the jail and ultimately responsible for what happened to him.

On cross-examination, plaintiff confirmed that he had no prior problems with inmate Cody Wright and that he had not said anything to any of the guards about being concerned about Wright because "I never had no reason to be." He stated that he filed two grievances concerning the incident in the JPCC administrative remedy procedure.

<u>ANALYSIS</u>

I.     <u>STANDARDS OF REVIEW</u>

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on

an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. <u>Spears</u>, 766 F.2d at 180. "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow

proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[1]

## II.   <u>FAILURE TO PROTECT FROM HARM</u>

While the incident described by Zweifel is truly unfortunate, the question for this court is not whether the incident in which Zweifel was injured by another inmate was unfortunate, but whether a violation of federal constitutional rights has been stated. Accepting as true for present purposes all of Zweifel's written submissions and testimony, I must conclude that no violation of Zweifel's constitutional rights by the defendants occurred in these circumstances.

As previously noted, Zweifel was a pretrial detainee at the time of the incident on which he bases this claim.   In <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), however, the Fifth Circuit held "that the State owes the same duty under the Due Process

---

[1]Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." Id. at 650. Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate, such as those alleged by Zweifel in this case. Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650. Here, although plaintiff alleges that he was exposed to harm by prison officials' acts or omissions, he fails to state a claim cognizable under Section 1983.

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hare, 74 F.3d at 650. The Eighth Amendment standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates. Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. Farmer, 511 U.S. at 834; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth

Amendment.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976).  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Id. at 834 (quotation omitted).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837; accord Newton, 133 F.3d at 308.  "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent to cause harm."  Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citing <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (additional citations and footnote omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291.

In this case, it cannot be concluded that prison officials unconstitutionally exposed plaintiff to a substantial risk of serious harm because his own testimony confirms that neither prison officials nor Zweifel himself had any reason to believe or even suspect that the inmate who allegedly attacked him posed danger to Zweifel under these particular circumstances. There was no history known to defendants of prior incidents between Zweifel and Wright. The incident occurred suddenly and without warning. As Zweifel testified, prison officials had no reason to suspect that the inmate who attacked him posed any known or anticipated threat to him before the assault, just as he himself had no reason to believe that Wright posed any threat to him.

Zweifel complains that the attack against him by the other inmate, Wright, occurred because the unknown female guard briefly left her post. However, his testimony in this regard, even accepted as true in its entirety, does not rise to the level of

deliberate indifference to a known risk of substantial harm required to establish a constitutional violation.  Under these circumstances, plaintiff at best asserts a state tort law negligence claim, not a claim of civil rights violations cognizable under Section 1983.  However, claims arising from allegedly negligent acts do not give rise to relief under Section 1983.

The Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property."  Daniels v. Williams, 474 U.S. 327, 328 (1986); Davidson v. Cannon, 474 U.S. 344, 347 (1986).  In a number of contexts, other courts have determined that allegations amounting to negligence cannot support a Section 1983 claim.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care); Hare v. City of Corinth, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (negligence insufficient to support failure to protect claim under Section 1983); Eason v. Thaler, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (negligence cannot support Section 1983 action for deprivation of religious rights or for an Eighth Amendment claim based upon prison officials' alleged gross negligence in permitting a gas leak to occur); Doe v. Taylor Indep. Sch. Dist., 975 F.2d 137, 142 (5th Cir. 1992), vacated on other grounds, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state

actors give rise to a <u>constitutional</u> tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.").

Under these circumstances, it cannot be concluded that any act or omission of prison officials knowingly exposed Zweifel to a substantial risk of serious harm or that they were deliberately indifferent, the strict standard required by the law for constitutional purposes. In the absence of deliberate indifference as discussed above, prison officials cannot be liable under Section 1983 for injuries allegedly resulting because a guard briefly left her post. If Zweifel wants to pursue negligence claims under state law, he is free to do so in state court, but any conceivable claim that prison officials violated his constitutional rights by failing to protect him from harm must be dismissed.

III.   <u>WRIGHT NOT A STATE ACTOR</u>

To be successful under Section 1983, a plaintiff must establish that the defendant has acted under color of state law in violating his rights. <u>Daniels v. Williams</u>, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). Action taken under color of state law for purposes of Section 1983 requires a defendant's use of power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law" and when the defendant is engaged in the "performance of official duties." <u>United States v. Causey</u>, 185 F.3d 407, 415 (5th Cir. 1999). To state a claim under Section 1983, a plaintiff must show "(1) deprivation of a right, privilege or immunity

secured by the federal laws or Constitution (2) <u>by one acting under color of state law</u>."
<u>Mississippi Women's Medical Clinic v. McMillan</u>, 866 F.2d 788, 791 (5th Cir. 1989)
(emphasis added); <u>Morris v. Dearborne</u>, 181 F.3d 657, 666 n.6 (5th Cir. 1999).  Plaintiff
must show that defendant's actions are "fairly attributable to the state."  <u>West v. Atkins</u>,
487 U.S. 42, 49 (1988).

Under no circumstances can Cody Wright, the inmate named by plaintiff as a
defendant in this matter, be considered a state actor.  <u>See</u> <u>Polk County v. Dodson</u>, 454
U.S. 312, 325 (1981); <u>Hudson v. Hughes</u>, 98 F.3d 868, 873 (5th Cir. 1996); <u>Mills v. Criminal District Court No. 3</u>, 837 F.2d 677, 679 (5th Cir. 1988).  Wright's actions upon
which plaintiff bases his claims were clearly taken as a private person not in any official
capacity authorized by the State.  Because Wright is not a state actor, plaintiff's Section
1983 claim against this defendant has no basis in federal law and must be dismissed for
failure to state a cognizable claim.

IV.    <u>MEDICAL CARE</u>

It appears that Zweifel was a pretrial detainee for most of the time and a convicted
prisoner for some of the time during which he complains about his medical care in this
case.  Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir.
1996), it appeared that prison officials must provide pretrial detainees with reasonable
medical care unless the failure to provide it was reasonably related to a legitimate

government interest.  Bell v. Wolfish,  441 U.S. 520, 539 (1979); Mayweather v. Foti,

958 F.2d 91 (5th Cir. 1992); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987).  The inquiry

was "whether the denial of medical care . . . was objectively reasonable in light of the

Fourteenth Amendment's guarantee of reasonable medical care and prohibition on

punishment of pretrial detainees."  Pfannstiel v. City of Marion, 918 F.2d 1178, 1186

(5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d

449, 455 (5th Cir. 1992).

> In Hare, however, the Fifth Circuit held:
>
> (1) that the State owes the same duty under the Due Process Clause and the
> Eighth Amendment to provide both pretrial detainees and convicted
> inmates with basic human needs, including medical care and protection
> from harm, during their confinement; and (2) that a state jail official's
> liability for episodic acts or omissions cannot attach unless the official had
> subjective knowledge of a substantial risk of serious harm to a pretrial
> detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.   The Fifth Circuit explained that for the Bell "reasonable

relationship" test to be applicable, the pretrial detainee must be able to show that a prison

official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

existence of an identifiable intended condition or practice" or that the "official's acts or

omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice."  Id.

at 645.  If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Id.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

The same two-pronged analysis applied to Zweifel's claim of failure to protect from harm also applies to his claim of inadequate medical care. Thus, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and the inmate must show that the prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 834; accord Wilson, 501 U.S. at 297; Mendoza v.

19

Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).  Again, "'[s]ubjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

In the instant case, plaintiff's pleadings as expanded by his testimony establish that nothing more than episodic acts or omissions as defined in Hare are at issue in this case. Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  As to his medical care claim, Zweifel fails completely to allege facts sufficient to establish deliberate indifference.

Even assuming that plaintiff's broken jaw requiring oral surgery was a serious condition for constitutional purposes, Zweifel has alleged facts, confirmed by the medical records, that negate any inference of deliberate indifference by jail officials.  Plaintiff's complaint as amended by his testimony shows that he received constitutionally adequate medical care for the injuries sustained in the attack while incarcerated at the jail when he was provided with extensive medical attention, including surgery, medication, post-operative follow-up examination, observation in the jail's medical unit and other specialized care for his condition.  See Baker v. Brantley County, 832 F. Supp. 346, 352 (S.D. Ga. 1993), aff'd, 19 F.3d 37 (11th Cir. 1994) (no deliberate indifference to serious

medical need of pneumonia when plaintiff was examined twice by emergency medical technician and twice by physician, and plaintiff received prescription medication); <u>Pierre v. Gruler</u>, No. 3:06-cv-45-J-32JRK, 2009 WL 383352, at *10 (M.D. Fla. Feb. 16, 2009) (Jail physician was not deliberately indifferent to plaintiff's shoulder injury resulting from fall to the ground after being shot with a taser gun, when plaintiff "received extensive and reasonable medical treatment by" physician and other medical providers at the jail and was "promptly referred" to an orthopedic surgeon.).

Although Zweifel has alleged delay in receiving medical care and has expressed dissatisfaction with the lack of speed with which his treatment was provided, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

<u>Gobert</u>, 463 F.3d at 346 (footnotes, citations and internal quotations omitted). No such showing has been made on the current record.

Mere delay in receiving care is not in and of itself a constitutional violation. <u>Easter v. Powell</u>, 467 F.3d 459, 463 (5th Cir. 2006); <u>Mendoza</u>, 989 F.2d at 195; <u>Wesson</u>

v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. Plaintiff's allegations concerning the delay he experienced and the alleged effects of that delay do not rise to a level sufficient to constitute a serious medical need for constitutional purposes.

Contentions like Zweifel's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

Therefore, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

V.     NO PARTICULAR RIGHT TO PRIVILEGES

Zweifel has no constitutional right to receive any of the privileges of which he complains he was temporarily deprived, including visitation, telephone, outgoing mail and canteen services, during the 23-day period of time he was being kept under observation in the medical unit at the jail.  Prison officials have broad discretion to administer conditions of confinement, and the federal courts will not interfere with legitimate administration without a constitutional violation.  Bell v. Wolfish, 441 U.S. 520, 547-48 (1979); Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990).

As to Zweifel's allegation that he was denied access to a telephone, prisoners have "'no right to unlimited telephone use.'  Instead, a prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'"  Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) (quoting Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir. 1982); Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986)).  "Prisons legitimately impose a variety of restrictions on inmates' use of telephones."  Roy v. Stanley, No. 02- CV-555-JD, 2005 WL 2290276, at *7 (D.N.H. Sept. 20, 2005) (citing United States v. Lewis, 406 F.3d 11, 13 (1st Cir.

2005); <u>Gilday v. Dubois</u>, 124 F.3d 277, 293 (1st Cir. 1997); <u>Spurlock v. Simmons</u>, 88 F. Supp. 2d 1189, 1193 (D. Kan. 2000)).

In addition, "[c]onvicted prisoners have no absolute constitutional right to visitation." <u>Lynott v. Henderson</u>, 610 F.2d 340, 342 (5th Cir. 1980); <u>accord</u> <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1113-14 (9th Cir. 1986); <u>Cooper v. Garcia</u>, 55 F. Supp. 2d 1090, 1098 (S.D. Cal. 1999). "[F]or convicted prisoners visitation privileges are a matter subject to the discretion of prison officials." <u>Thorne v. Jones</u>, 765 F.2d 1270, 1273 (5th Cir. 1985) (quotation omitted). "A prisoner does not retain constitutional rights that are inconsistent with the legitimate penological objectives of the correction system." <u>Smith v. Bingham</u>, 914 F.2d 740, 742 (5th Cir. 1990).

Prison visitation obviously implicates concerns about prison security, and such concerns are preeminent. <u>Thorne</u>, 765 F.2d at 1275 (citing <u>Block v. Rutherford</u>, 468 U.S. 576, 589 (1984); <u>Pell v. Procunier</u>, 417 U.S. 817, 823 (1974)). Plaintiff has not asserted any facts tending to show that the restrictions on his visitation privileges are not related to legitimate penological interests.

Denial of particular commissary items cannot be deemed an "extreme deprivation" under <u>Wilson</u>. Denial of full commissary privileges has repeatedly been found not to violate the Eighth Amendment. <u>Ward v. Oliver</u>, 1994 WL 66652, *3 (7th Cir. 1994) (Eighth Amendment contemplates only shelter, sanitation, food, personal safety, medical

care, and clothing and does not dictate access to particular commissary items); <u>Allen v. DeTella</u>, 1997 WL 106098, *4 (N.D. Ill. 1997) (commissary restrictions on particular foods did "not constitute atypical and significant hardships on an inmate"); <u>Davie v. Wingard</u>, 958 F. Supp. 1244 (S.D. Ohio 1997) (denial of commissary privileges did not state a claim under the Eighth Amendment).

Particularly when viewed against the backdrop of Zweifel's post-surgical confinement for observation purposes in the jail's medical unit during the brief period about which he complains, it cannot be concluded that his temporary deprivation of privileges rose to the level of a constitutional violation under the circumstances described by plaintiff. These allegations fail to state a claim upon which relief might be granted under Section 1983.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this \_\_\_\_6th\_\_\_\_ day of May, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE